Tousey, Floyd & Love v. Bishop.

---

## TOUSEY, FLOYD & LOVE v. BISHOP, *et al.*

1. Judgment: COLLATERAL AGREEMENT TO RESTRAIN. Whether a judgment and its legal incidents can be affected by an antecedent or contemporaneous collateral agreement to stay execution, *query.*

2. Principal and surety: AGREEMENT TO GIVE TIME. An agreement between the creditor and the principal, giving further time of payment to the latter, that is, for any reason ineffectual to tie the hands of the creditor, does not operate as a discharge of the surety. The *disability of the creditor* to proceed against the principal must not only be apparent, but actual in law.

3. ——— STAY OF EXECUTION. Where such a case is shown by the evidence as would prevent the principal in a judgment, rendered against him and his surety in a replevin bond, from successfully setting up an agreement made between him and the creditor for a stay of execution, there is no release of the surety.

*Appeal from Lee District Court.*

THURSDAY, APRIL 18.

SURETIES: EFFECT OF GIVING TIME.—Plaintiffs were sureties in a replevin bond, in which one Ladue was the principal. This bond was executed for the benefit of Root, Giger & Bro. In the present proceeding, the

plaintiffs, as such sureties, claim that they are released because of a valid agreement on the part of Root, Giger & Bro., to extend the time of payment to Ladue without the knowledge of plaintiffs.

The further necessary facts are briefly these: Root, Giger & Bro., in 1865, commenced an attachment suit in the Lee District Court, against one Cappell, and attached the new hull of a steamboat, afterward called the Dictator. Shortly afterward, Ladue brought his action of replevin for the possession of said steamboat hull, and the present plaintiffs signed the replevin bond as his sureties. This bond was the usual statutory bond required in actions of replevin.

In due course, Root, Giger & Bro. recovered, in their attachment action, judgment against Cappell for the sum of $7,478.58.

Ladue failed in the replevin action. The record entry shows that the replevin cause came on for trial, on the 14th day of December, A. D. 1865; the plaintiff appearing by Gibson, Browne and H. Scott Howell, Esqrs., his attorneys; and the sheriff and Root, Giger and Bro., by J. Tracy and H. Strong, Esqrs., their attorneys; and that the court, after hearing the evidence, found that Root, Giger & Bro. were entitled to the possession of the property replevied, and that the value of their interest therein was $5,000. The court accordingly rendered judgment in favor of Root, Giger & Bro., and against Ladue, for the $5,000, and also (under the statute) against the present plaintiffs, as sureties in the replevin bond.

Evidence was introduced by both parties to the present cause, showing that, in point of fact, there was no trial of the replevin suit; but that the judgment for $5,000 rendered therein was the result of a compromise between Ladue, represented by his attorneys, and Root, Giger & Bro., represented by their attorneys, and that it was part

of the agreement of compromise that Root, Giger & Bro. were to give to Ladue a stay of execution for four months.

The judgment entry contains no reference to a stay of execution; nor was it intended by the parties that it should. But it was agreed that such stay should be evidenced by a separate agreement. Accordingly, as part of the same transaction, which resulted in the judgment for $5,000, the following agreement in writing was executed by Root, Giger & Bro., and delivered to said Ladue, or his attorneys, to wit:

| "PETER A. LADUE *v.* "ROOT GIGER & BROTHER ET AL. | *In District Court of Lee County, at Fort Madison.* |
|---|---|

" For value received we hereby agree not to issue execution upon the judgment this day rendered against said Peter A. Ladue and others, in our favor, for five thousand dollars, for the space of four months from this date, and that upon the payment of said judgment of $5,000, this day rendered as aforesaid, with interest and costs, we hereby agree to transfer and assign to said Ladue, or cancel the same as he may direct, the judgment we hold against F. L. Cappell, in the District Court, for this county, at Keokuk, for about $7,478.58; said Ladue to pay the costs we may be liable to pay in said suit. When the said judgment this day rendered is paid off and satisfied, the same to be cancelled or assigned at plaintiff's option.

"ROOT, GIGER & BRO.

"Dec. 14, 1865."

The present plaintiffs, sureties in said replevin bond, now allege that said stay of execution was without their knowledge or consent, and that they were consequently released from all liability to Root, Giger & Bro.; yet,

that the latter have caused an execution to be issued and delivered to the defendant Bishop, as sheriff, to be levied on their property, as said Ladue has none out of which it can be made. Plaintiffs seek perpetually to enjoin said execution as against them, and obtained a temporary injunction.

The answer denies that the agreement for stay of execution is valid, first, on the ground that there was no consideration in fact for the same; second, on the ground that it was executed upon the faith of representations made by the attorneys of Ladue, that they represented the sureties, and that such an extension of time to Ladue would be and was satisfactory to them.

Upon the hearing, the court decided in favor of the plaintiffs, and entered a decree perpetually enjoining Root, Giger & Bro. from collecting any part of their judgment of $5,000 from the plaintiffs.

From this decree Root, Giger & Bro. appeal.

*R. H. Gilmore, Gibson Brown* and *H. Scott Howell* for the plaintiffs.

*Rankin & McCrary* and *B. J. Hall* for the defendants.

DILLON, J.—Although the voluminous testimony in this case has been attentively examined by the court, it is not deemed necessary to review it in this opinion.

1. JUDGMENT: collateral agreement to restrain.

Upon some material questions it is conflicting and irreconcilable. It is proposed simply to state the results which the court has reached.

We may concede the fundamental proposition of law upon which the plaintiff's case is grounded, viz.: that, if there was, at and before the rendition of judgment, a valid and binding agreement by Root, Giger & Bro., to stay the execution, and if this was made without the consent of the sureties, this would in law discharge them.

This, we say, will be conceded, although a portion of the court is not willing to be concluded on the proposition that it is not within the power of the principal in the replevin bond to make any contract of compromise that he sees proper or deems for his interest, so that it be done without collusion and in good faith; and since any money judgment rendered against the principal goes, under the statute, also against the sureties, one of the conditions or terms of such compromise, may well be a stipulation for time of payment of the judgment to which the plaintiff in replevin consents. (As to effect on surety, of stay of execution in ordinary cases, see 2 Am. Lead. Cas., 3d ed., 313, 314, and cases cited; and *Hershler* v. *Reynolds*, present term.) But upon this question the court regard it as unnecessary to express any opinion.

The plaintiffs' proposition of law being granted, the remaining question in the case is this, viz.: whether the agreement to stay the execution was valid and binding upon Root, Giger & Bro. Upon the evidence, the court are of opinion that it was not.

The judgment in favor of Root, Giger & Bro. was absolute on its face, giving the right to issue an execution at once, or at any time. The agreement to stay it, was not made part of the judgment; nor was it intended that it should be. On the contrary it was intended that it should not be.

There are not wanting respectable authorities to the effect that, under such circumstances, the judgment and its legal incidents cannot be affected by an antecedent or contemporaneous independent collateral agreement to stay execution; and that the remedy for the violation of such an agreement is not and cannot be, in equity, to stay or enjoin the judgment, but it is and must be by an action at law on the agreement, for damages. See on this

subject *Woolworth et al.* v. *Brinker*, 11 Ohio, 593; *Ful-lam* v. *Valentine*, 11 Pick., 156.

But we do not place our judgment upon this ground; but upon the ground that the agreement to stay the **2. PRINCIPAL** execution was made and given by Root, Giger **AND SURETY:** & Bro., upon the understanding that the **agreement to give time.** sureties were represented, and that such stay would be satisfactory to them. The court, upon an examination of all the evidence, and particularly the circumstances transpiring at the time the compromise was made, and the after conduct of the parties, are of opinion that this understanding on the part of Root, Giger & Bro. was reasonably justified by what was said and done by the attorneys of Ladue, and without which understand-ing the agreement would not have been made. Such a case is shown by the evidence (which it would require many pages fully to refer to) as would prevent Ladue from being entitled to use the agreement for a stay, against Root, Giger & Bro., had they issued execution on their judgment.

That is, had execution issued, and had Ladue applied to a court of equity to enjoin it upon the strength of his agreement, and had the same facts then been disclosed as have been disclosed in this case, we are quite confident that no court of equity would or should have enjoined the collection of this judgment.

If this is so, then Root, Giger & Bro. have never at any time been disabled from proceeding to collect their judg-ment; and had the sureties paid it, as they might, they would have been subrogated to the right, of Root, Giger & Bro., and could at once have enforced it, in spite of the agreement to stay the execution. If we are right in our conclusions upon the evidence, that Ladue could not effectually have used the agreement to stay the execution, then, in law, there was no valid extension of time, and

consequently the sureties are not released. For, in point of law, any agreement that would be ineffectual to tie the hands of the creditor, as against the principal debtor, would likewise be ineffectual to operate as a discharge of the surety.

The disability of the creditor to proceed against the sureties must, in order to exonerate the latter, be not apparent only, but actual; not binding in honor simply, but in law. Such is the well settled doctrine, and the books abound in multiplied illustrations of its application. *Davey* v. *Prendergrass*, 5 B. & Ald., 187; *Tudor* v. *Goodloe*, 1 B. Mon., 322; and see cases collected 2 Am. Lead. Cases (3d ed.), 306, 310.

We have less hesitation in reaching the conclusion that it is our duty to reverse the decree below, because the testimony shows that Ladue was, and all the time has been, insolvent; and that, in fact, the sureties have not been prejudiced by the agreement of which they complain. While, on the other hand, to affirm the decree, would cause Root, Giger & Bro. to lose their debt against Ladue, which had been fully secured to them by the property attached, and which was taken from them by the action of the plaintiff, in signing the replevin bond.

Let the decree of the District Court stand reversed, and the petition dismissed.

Reversed.